RECEIVED

JUL 1 4 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

BY: _____

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| JEFFREY DAVIS | CIVIL ACTION NO. 5:12-CV-2738 |
| versus | JUDGE TOM STAGG |
| UNION PACIFIC RAILROAD COMPANY | MAGISTRATE MARK HORNSBY |

## MEMORANDUM RULING

Before the court are a motion for partial summary judgment filed by the plaintiff, Jeffrey Davis ("Davis"), and a cross-motion for summary judgment filed by the defendant, Union Pacific Railroad Company ("Union Pacific"). See Record Documents 58 and 59. For the reasons set forth herein, Davis's motion is **DENIED**, and Union Pacific's motion is **DENIED.**

## I. BACKGROUND

Davis began working for Union Pacific in 2007 in Iowa, transferred to work for Union Pacific in Shreveport in June 2010, and was working at the "Reisor Yard" in Shreveport on July 15, 2010. See Record Document 58, Statement of Material Facts Not At Issue at ¶¶ 7-9; Record Document 59, Statement of Undisputed Facts at

¶¶ 1-2. Davis alleges that he turned his ankle when some ballast[1] under his right foot shifted. See Record Document 21 at ¶ 8. The amended complaint further states that "the pain subsided" and Davis "was able to continuing [sic] working approximately 1 and a half hours until the end of his shift." Id. at ¶ 8. Union Pacific contends that, immediately after twisting his ankle, Davis looked at the area around him and he did not see anything out of the ordinary or anything defective to report. See Record Document 59, Statement of Undisputed Facts at ¶ 2. Davis claims his ankle was slightly swollen that night but he thought the swelling would go down overnight. See Record Document 21 at ¶ 9.

The next day, July 16, Davis alleges that his right calf and ankle were both swollen. He elevated his leg to try and reduce the swelling so that he could report for his shift at 3:30 p.m. See id. at ¶ 10. Davis contends that, when the swelling did not go away, he did not think he could perform work safely. See id. at ¶ 11. The complaint alleges that Davis called Union Pacific's Manager of Train Operations, Andrew Steinkamp ("Steinkamp") and left him a voicemail. See id. Specifically, Davis stated in the voicemail that he "could hardly walk" and was going to take the

---

[1] According to Union Pacific, ballast is "the stone or other material placed underneath and around railroad tracks to provide drainage, erosion protection, and structural support." Record Document 59, Memorandum in Support at 3, n. 18 (internal quotations omitted).

day off, but he was "not trying to put on a personal injury claim . . . ." Id. Union Pacific alleges that, in his voicemail to Steinkamp, Davis stated his injury was in no way work-related. See Record Document 59, Statement of Undisputed Facts at ¶ 3.

Also on July 16, Davis went to the emergency room at Willis-Knighton Medical Center in Shreveport. See Record Document 21 at ¶ 12; Record Document 58, Statement of Material Facts Not At Issue at ¶ 16. The amended complaint states that notes prepared by a nurse contain contradictory information on whether Davis's pain began on July 15 or July 16, despite Davis's contention that he advised the nurse that he turned his ankle at work on July 15. See Record Document 21 at ¶ 12. Davis was examined by Dr. John W. Reeves ("Dr. Reeves") and diagnosed with possible tendinitis or gout.[2] Dr. Reeves ordered Davis to schedule a follow-up appointment with Dr. Kirit S. Patel ("Dr. Patel"). See id.; Record Document 58, Statement of Material Facts Not At Issue at ¶¶ 16-17.

Steinkamp called Davis on July 19 to see how Davis was doing. See Record Document 21 at ¶ 13. Davis claims to have told Steinkamp he was diagnosed with

---

[2] The amended complaint, purporting to quote Dr. Reeves's notes, states the diagnosis was either tendinitis or gout. The statement of facts provided by Davis in support of his motion states that Davis received a diagnosis of gout. See Record Document 21 at ¶ 12; Record Document 58, Statement of Material Facts Not At Issue at ¶ 17. Union Pacific's statement of facts in support of its motion states that Davis was diagnosed with either tendinitis or gout. See Record Document 58, Statement of Undisputed Facts at ¶ 4.

3

gout.  See Record Document 58, Statement of Material Facts Not At Issue at ¶ 23.

However, according to Davis, Steinkamp believed that the injury might be work-

related and Steinkamp spoke to Union Pacific's Return to Work Manager, Terry

Owens ("Owens"), and Union Pacific's General Superintendent, Monty Whatley

("Whatley"), to inform them that Davis may have been injured at work.  See id.,

Statement of Material Facts Not At Issue at ¶¶ 24-26, 28, 30.  In their opposition to

Davis's motion, Union Pacific alleges that while Steinkamp thought it was possible

that Davis's injury might be work-related, he had no reason to doubt the diagnosis of

gout.  See Record Document 72, Statement of Disputed Facts.  Union Pacific further

alleges that Steinkamp directly asked Davis on two occasions whether his injury was

work-related, and that Davis denied it both times.  See Record Document 59,

Statement of Undisputed Facts at ¶ 6.

Davis contends that, during their initial phone conversation on July 19,

Steinkamp instructed Davis to call Owens.  See Record Document 21 at ¶ 13.

According to Davis, Owens called him on July 20 and Davis told her about turning

his ankle and his visit to the emergency room.  See id. at ¶ 15.  Davis contends that

he and Steinkamp spoke by phone on four occasions between July 19 and July 30,

and that Davis was off work with permission until July 30.  See Record Document 58,

Statement of Material Facts Not At Issue at ¶¶ 19-20.  Moreover, Davis alleges that,

on July 30, Steinkamp instructed him to direct all further communications to Owens. See id. at ¶ 22. Effective July 30, Davis was placed on a medical leave of absence by Union Pacific. See id. at ¶ 21; Record Document 59, Ex. 2.

On July 30, Davis was examined by Dr. Patel. The amended complaint states that Davis "presented with worsening right ankle pain, swelling and inability to bear weight." Record Document 21 at ¶ 16. Dr. Patel ordered a MRI for August 2. See id. Davis alleges that he received the MRI results on August 11 and, for the first time, was diagnosed with a severe high ankle sprain. See id. at ¶ 20. The next day, August 12, Davis states that he completed a Union Pacific Form 52032 Report of Personal Injury or Occupational Illness ("injury report"). See id. at ¶ 21; Record Document 58, Statement of Material Facts Not At Issue at ¶ 33. Union Pacific alleges that Davis met with Steinkamp in person on August 12 and told him he sprained his ankle at work on July 15, and that Davis claimed to know exactly when it occurred, where he was working, and that slipping on unstable ballast was what caused it. See Record Document 59, Statement of Undisputed Facts at ¶¶ 8-9.

According to Davis, Steinkamp confronted him about not submitting an injury report prior to August 12 and accused him of lying. See Record Document 21 at ¶ 22. Union Pacific contends that Steinkamp asked why Davis changed his mind about what happened on July 15 and that Davis did not have an answer. See Record

5

Document 59, Statement of Undisputed Facts at ¶ 11.  Moreover, Union Pacific

alleges that Steinkamp suspected Davis of lying because he asked Davis several times

before if the injury was work-related and Davis had indicated it was not.  See id.,

Statement of Undisputed Facts at ¶ 12.  Union Pacific states that Steinkamp talked to

Whatley about his concerns that Davis was lying, and they charged Davis with

dishonesty. See id., Statement of Undisputed Facts at ¶ 13.  Davis specifically alleges

that Steinkamp and Whatley issued a Level 5 disciplinary charge against him.  See

Record Document 58, Statement of Material Facts Not At Issue at ¶ 39.  Davis claims

that a Level 5 disciplinary charge is a dismissible offense.  See id., Memorandum in

Support at 9.

A "Notice of Investigation" letter was sent to Davis on August 19, informing

him that a formal investigation was to occur on August 26.  The notice specifically

stated the investigation would develop facts and determine responsibility, if any, for

> your alleged dishonest representation and
> embellishment of facts and circumstances surround an
> alleged on duty injury that you allege occurred at
> approximately 2115 hours, on July 15, 2010, . . . and
> your alleged misrepresentation of the facts
> surrounding an alleged on duty injury and alleged late
> reporting of an alleged on duty injury which was not
> made known to [Union Pacific] until August 12, 2012.

Record Document 58, Ex. I.  The formal investigation was ultimately postponed to

September 24, 2010.  See Record Document 21 at ¶¶ 26-27, 28; Record Document
58, Statement of Material Facts Not At Issue at ¶ 42.  Davis contends that, prior to the
formal investigation, Union Pacific terminated his health insurance and advised him
that he was no longer employed, both of which Davis claims were retaliation for
filing a personal injury claim and defending himself against the charge of dishonesty.
See Record Document 21 at ¶ 28.

The formal investigation occurred on September 24.  See Record Document 58,
Statement of Material Facts Not At Issue at ¶ 42; Record Document 59, Statement of
Undisputed Facts at ¶ 14.  Davis alleges that Steinkamp was the "charging manager"
and Lee Briggs was the "hearing officer" at the formal investigation.  See Record
Document 58, Statement of Material Facts Not At Issue at ¶¶ 43-44.  Union Pacific
states that Davis had union representation at the formal investigation.  See Record
Document 59, Statement of Undisputed Facts at ¶ 14.  The amended complaint states
that both Steinkamp and Davis testified.  See Record Document 21 at ¶ 29.

Following the formal investigation, Whatley sent a letter to Davis informing
him that he was being dismissed from Union Pacific for violating the rule against
dishonesty because of "your dishonest representation and embellishment of facts and
circumstances surrounding an on duty injury . . . and your misrepresentation of the
facts surrounding an on duty injury and late reporting of an on duty injury which was

7

not made known to [Union Pacific] until 8/12/2010 . . . ." Record Document 58, Ex. K. Davis contends he thereafter filed a complaint with the United States Department of Labor's Occupational Safety and Health Administration ("OSHA"), which was ultimately dismissed. See Record Document 21 at ¶¶ 33, 35. Additionally, Davis states that he filed an objection and request for de novo review before an Administrative Law Judge ("ALJ"), which was dismissed when Davis gave notice of intent to file the instant lawsuit in this court. See id. at ¶¶ 36-37.

Davis filed the instant lawsuit on October 22, 2012. See Record Document 1. Davis's amended complaint states causes of action under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq, for negligence, and under the Federal Railroad Safety Act ("FRSA"), specifically 49 U.S.C. § 20109, for retaliation. See Record Document 21. Union Pacific filed its motion for summary judgment, seeking dismissal of all of Davis's claims against it, the same day that Davis filed his motion for partial summary judgment, which seeks judgment as a matter of law as to his retaliation claim under the FRSA. See Record Documents 58 and 59. Both parties opposed one another's motions, and both parties filed a reply memorandum in support of their respective motions. See Record Documents 71-74.

## II. LAW AND ANALYSIS

**A.    Summary Judgment And Partial Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment.
> A party may move for summary judgment, identifying each claim
> or defense—or the part of each claim or defense—on which
> summary judgment is sought.  The court shall grant summary
> judgment if the movant shows that there is no genuine dispute as
> to any material fact and the movant is entitled to judgment as a
> matter of law.

Fed. R. Civ. P. 56(a).[3]  "A partial summary judgment order . . . is not a final judgment

but is merely a pre-trial adjudication that certain issues are established for trial of the

case."  F.D.I.C. v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994).  Partial summary

judgment serves the purposes of narrowing, simplifying, and focusing the issues for

trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.

1993).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315

---

[3] The Advisory Committee Notes reflect that subsection (a)'s heading and
text were amended in 2010 to clarify that "summary judgment may be requested
not only as to an entire case but also as to a claim, defense, or part of a claim or
defense."  Fed. R. Civ. P. 56(a) and Advisory Committee Notes.

(5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Davis's Retaliation Claim Under The FRSA.**

Davis's complaint alleges a cause of action for retaliation. Specifically, Davis contends that Union Pacific's decision to terminate him was due in whole or in part to certain actions by Davis that are protected activities under the FRSA, 49 U.S.C. § 20109. See Record Document 21. Both Davis's and Union Pacific's motions seek summary judgment in their favor as to this claim. See Record Documents 58 and 59.

The FRSA provides, in pertinent part:

> (a) A railroad carrier engaged in interstate or foreign commerce . . . or an officer or employee of such a railroad carrier, may not discharge, . . . reprimand, or in any other

10

> way discriminate against an employee if such
> discrimination is due, in whole or in part, to the employee's
> lawful, good faith act done, or perceived by the employer
> to have been done or about to be done--
>> (4) to notify, or attempt to notify, the railroad carrier
>> . . . of a work-related personal injury or work-related
>> illness of an employee

49 U.S.C. § 20109(a)(4).  Congress passed the FRSA to promote safety in railroad operations, and significantly amended the FRSA's whistleblower protections in 2007 to protect employees who engage in certain protected activities, including notifying the railroad carrier of a work-related injury.  See Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 156-57 (3d Cir. 2013).

The 2007 amendments to the FRSA incorporated the rules and procedures set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), 49 U.S.C. § 42121, for retaliation cases.  See 49 U.S.C. § 20109(d)(2)(A); Araujo, 708 F.3d at 157.  AIR-21 employs a two-part, burden-shifting test.  First, an employee bringing a retaliation claim must show, by a preponderance of the evidence, that "'(1) [the employee] engaged in protected activity; (2) the employer knew that [the employee] engaged in the protected activity; (3) [the employee] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.'"  Id. (quoting Allen v. Admin. Review Bd., 514 F.3d 468, 475-76 (5th Cir. 2008)).  The employee is not

11

required to show that the employer acted with a retaliatory motive. See id. at 158.

Second, once the employee satisfies his burden, "the burden shifts to the employer to demonstrate 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action," even had the protected activity not occurred. Id. (quoting Allen v. Admin. Review Bd., 514 F.3d 468, 476 (5th Cir. 2008)); 49 U.S.C. § 42121(b)(2)(B)(ii). The AIR-21 two-part test has been explicitly adopted for FRSA complaints under regulations promulgated by the Department of Labor. See Araujo, 708 F.3d at 157; 29 C.F.R. § 1982.104(e).

Davis asserts that he is entitled to summary judgment on his retaliation claim under the FRSA because he was engaging in protected activity when he reported his injury as being work-related, Union Pacific knew he was engaging in protected activity, he suffered an unfavorable personnel action when he was terminated, and Davis's reporting of his injury as work-related was a contributing factor in his termination by Union Pacific. See Record Document 58. In contrast, Union Pacific contends it is entitled to summary judgment on Davis's retaliation claim because Davis was not acting in good faith (and therefore his actions were not protected activity under the FRSA), Davis cannot show that Union Pacific knew that Davis was engaging in protected activity, and Davis cannot prove that any protected activity was a contributing factor in the company's decision to terminate him. See Record

Document 59. Union Pacific concedes that Davis suffered an unfavorable personnel action. See id. The court will examine the remaining three elements in turn.

### 1.     Whether Davis Engaged In Protected Activity.

Protected activities under the FRSA include notifying and attempting to notify a railroad carrier of a work-related injury of an employee.   See 49 U.S.C. § 20109(a)(4).   Additionally, the FRSA prevents employers from disciplining, or attempting to discipline, an employee "for following orders or a treatment plan of a treating physician . . . ." 49 U.S.C. § 20109(c)(2).   Davis contends that he was engaged in protected activity during all of his communications with Steinkamp between July 16 and August 12, 2010, regarding his injury, and when he submitted the injury report on August 12 claiming his injury was work-related.   Union Pacific does not argue that these actions are per se not protected activities under the FRSA, but rather that Davis's actions are not protected activities because they did not satisfy the FRSA's good faith requirement.

The FRSA only protects employees from retaliation for "good faith act(s) done." 49 U.S.C. § 20109(a).   The question, though, is what exactly this good faith requirement entails.   In its motion, Union Pacific cites to two cases in support of its good faith arguments.   The court will examine both of these cases.

The first case that Union Pacific cites is Griebel v. Union Pacific Railroad

Company, No. 2011-FRS-11 (A.L.J. Jan. 31, 2013). In Griebel, the plaintiff, a train conductor, filed a claim against Union Pacific under the FRSA alleging his termination from the company was retaliation for filing a personal injury report. See Griebel, No. 2011-FRS-11 at *2. In analyzing whether the plaintiff had engaged in protected activity, the judge observed that "the FRSA does not protect fraudulent or dishonest notification" of work-related injuries and "the notification or attempt of notification must be done in good faith." Id. at *22-23. The employer argued that the plaintiff was in bad faith because he initially expressed doubts about whether the derailment of a train he was operating further exacerbated a preexisting back injury before submitting an injury report. See id. at *23. However, the judge concluded that, even if the plaintiff initially expressed reservations about whether his injury was work-related, the plaintiff was in good faith "when he filed the injury report " and therefore had engaged in protected activity. Id.

The second case cited by Union Pacific is Ray v. Union Pacific Railroad Company, 971 F. Supp. 2d 869 (S.D. Iowa 2013). The plaintiff in Ray brought a claim under the FRSA against Union Pacific, alleging that his termination was retaliation for submitting an injury report. See Ray, 971 F. Supp. 2d at 872. The plaintiff asked for time off to have knee surgery and, when asked, told Union Pacific that his knee injury was not work-related. One month later, the plaintiff submitted

14

an injury report claiming that his knee injury was work-related.  In response to a question on the injury report form, the plaintiff stated he first became aware the injury was work-related one year before.  See id.  The plaintiff subsequently gave varying explanations about when he became aware his knee injury was work-related and why he initially told Union Pacific that it was not.  See id. at 872-875, 882.

Union Pacific argued in Ray that the plaintiff did not engage in protected activity because he was not in good faith based on his inconsistent stories.  See id. at 882-83.  The court noted that the FRSA "does not apply the good faith requirement to all of an employee's interactions with a railroad."  Id. at 883-84.  Rather, the court held that the relevant inquiry is "whether, at the time he reported his injury to [Union Pacific], Plaintiff genuinely believed the injury he was reporting was work-related."  Id. at 884 (emphasis in original).  The court therefore held that, for summary judgment purposes, the plaintiff satisfied the first element of his retaliation claim because he genuinely believed his injury was work-related at the time he reported his injury to Union Pacific.  See id.

Thus, when a plaintiff brings a claim under the FRSA alleging he was retaliated against for reporting a work-related injury, both Griebel and Ray require that the plaintiff actually believed, at the time he reported the injury, that it was work-related.  If the plaintiff did so believe, then his activities were in good faith and were protected

15

under the FRSA.  Applying this good faith standard to the facts in the instant case, there is a genuine dispute of material fact as to whether Davis believed his injury was work-related when he submitted the injury report on August 12.   The injury purportedly occurred during Davis's shift on July 15, but he did not file an injury report with Union Pacific until August 12, almost a month later.   Union Pacific alleges that, during that time, Davis consistently stated the injury was not work-related.   However, Davis claims the reason he did not file the injury report until August 12 was that he initially received a diagnosis of gout, which would not have been a work-related injury.   Davis further states that, upon being diagnosed with a high ankle sprain on August 11, he filed the injury report the next day.   These allegations create a genuine dispute of material fact as to whether, at the time Davis filed the injury report on August 12, Davis actually believed his injury was work-related, and therefore whether Davis was acting in good faith within the meaning of the FRSA.

### 2.   Whether Union Pacific Knew That Davis Was Engaging In Protected Activity.

Union Pacific next argues that Davis cannot show that Union Pacific knew that he was engaging in activity protected under the FRSA.  However, Union Pacific does not argue that it was not aware that Davis filed the injury report on August 12.

Rather, Union Pacific contends that this second element requires a showing that Union Pacific knew that Davis's injury report was filed in good faith. In other words, if the employer believes an employee is acting in bad faith—for example, by filing a false or unsubstantiated report of a work-related injury—then the employer cannot be held to have known the employee was engaging in protected activity under the FRSA.

The court finds this argument unpersuasive. If the court were to side with Union Pacific, then employers would effectively be immune under the FRSA if they could allege sufficient facts to show they thought the employee might be lying or otherwise acting in bad faith. The FRSA is intended to be protective of employees. See Araujo, 708 F.3d at 158. The statute would be far less protective if an employer could avoid liability simply by arguing it thought the plaintiff was acting in bad faith, rather than by actually showing the plaintiff was acting in bad faith. Whether the employer believed the employee was acting in good faith is irrelevant. Surely if Union Pacific thought that Davis was acting in good faith but subsequently found out that he was not, it would not argue that Davis should be allowed to bring a claim under the FRSA because it thought he was acting in good faith. Similarly, the court fails to see why Union Pacific's belief that Davis was lying should shield it from liability if Davis can show that he was acting in good faith at the time he filed the

17

injury report.

### 3.   Whether Davis's Protected Activities Were A Contributing Factor In Union Pacific's Decision To Terminate Davis.

Union Pacific lastly alleges that Davis's protected activities were not a contributing factor in its decision to terminate him. Davis argues that his filing the injury report on August 12, which he claims is a protected activity under the FRSA, was the starting point for his eventual termination by Union Pacific. Union Pacific counters that it terminated Davis for suspected dishonesty and that the filing of the injury report did not play any role in its decision to terminate him.

Under the FRSA, a contributing factor is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Araujo, 708 F.3d at 158 (internal citations omitted). An employee does not need to show that the employer had a retaliatory motive to satisfy this element. See id. Moreover, an employee can use either direct or circumstantial evidence to show that activities protected under the FRSA led to retaliatory actions by the employer. See Ray, 971 F. Supp. 2d at 884; In re: DeFrancesco v. Union R.R. Co., No. 10-114, 2012 WL 694502 at *3 (Dep't of Labor Feb. 29, 2012). "Temporal proximity between the employee's engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected

18

activity was a contributing factor to the adverse employment action." <u>Araujo</u>, 708 F.3d at 160. Additional relevant circumstantial evidence can include

> indications of pretext, inconsistent application of an employer's policies, an employer's shifting explanations for its actions, antagonism or hostility toward [an employee's] protected activity, the falsity of an employer's explanation for the adverse action taken, and a change in the employer's attitude toward the [employee] after he . . . engages in protected activity.

<u>Ray</u>, 971 F. Supp. 2d at 885 (quoting <u>DeFrancesco</u>, 2012 WL 694502 at *3).

The court finds there is a genuine dispute of material fact as to this element. Davis alleges that he was given permission to miss work and placed on a medical leave of absence after suffering his injury when he believed the diagnosis was gout. After being diagnosed with a high ankle sprain on August 11, Davis submitted the injury report on August 12. Exactly one week later, he received a "Notice of Investigation" letter charging him with dishonesty regarding his injury report and purported work-related injury. The investigation was initially scheduled for August 26, two weeks after Davis submitted the injury report. It ultimately was postponed until September 24, and Davis was terminated on October 4, less than two months after filing the injury report. The temporal proximity of these events alone is sufficient to create a genuine dispute of material fact as to whether Davis's filing of the injury report was a contributing factor in his ultimate termination.

19

Having found that there are genuine disputes of material fact as to two of the elements essential to Davis's claim under the FRSA, neither party is entitled to judgment as a matter of law as to this claim. Therefore, Davis's motion for partial summary judgment is **DENIED** and Union Pacific's motion for summary judgment is **DENIED** as to Davis's retaliation claim under the FRSA.

**C.    Davis's Negligence Claim Under The FELA.**

Davis's complaint further alleges a cause of action for negligence under the FELA. Specifically, Davis contends that Union Pacific was negligent in failing to warn him of the general risks, dangers, and harm to which he was exposed when working and the specific dangerous and defective condition of the track, track beds, ballast, and walking surfaces, failing to inspect, repair, and maintain the track, track beds, ballast, and walking surfaces, and failing to promulgate and enforce reasonable policies and procedures to ensure that tracks, track beds, ballast, and walking surfaces were safe to walk on. See Record Document 21. According to Davis, Union Pacific's negligent acts were a direct cause of his ankle injury. See id.

The FELA provides that

> Every common carrier by railroad . . . shall be liable in
> damages to any person suffering injury while he is
> employed by such carrier in commerce . . . for such injury
> . . . resulting in whole or in part from the negligence of any
> of the officers, agents, or employees of such carrier, or by

20

> reason of any defect or insufficiency, due to its negligence,
> in its cars, engines, appliances, machinery, track, roadbed,
> works, boats, wharves, or other equipment.

45 U.S.C. § 51. The FELA is the exclusive remedy for a railroad employee who suffers an injury that is caused by a railroad employer's negligence. See Huffman v. Union Pac. R.R., 675 F.3d 412, 416 (5th Cir. 2012); Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 442 (5th Cir. 2001). Under the FELA, railroads are "charged with providing a reasonably safe work environment for its employees." Huffman, 675 F.3d at 417.

Union Pacific argues that Davis's FELA claim is precluded as a matter of law. Specifically, Union Pacific contends that the FRSA and an accompanying federal railroad safety regulation relating to ballast preclude Davis from bringing a FELA claim. See Record Document 59. Union Pacific is correct that, in some instances, the FRSA and regulations promulgated thereunder can preclude a FELA claim. See Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443-44 (5th Cir. 2001); Waymire v. Norfolk & W. Ry. Co., 218 F.3d 773, 776-77 (7th Cir. 2000). Courts have reasoned that certain claims under FELA are precluded by the FRSA and accompanying regulations in order to achieve the FRSA's stated goal that railroad safety laws and regulations be "nationally uniform to the extent practicable." 49 U.S.C. § 20106(a). See Lane, 241 F.3d at 443; Waymire, 218 F.3d at 776.

21

The single federal regulation that relates to ballast is 49 C.F.R. § 213.103

("Section 213"), which states

> Unless it is otherwise structurally supported, all track shall
> be supported by material which will --
> (a) Transmit and distribute the load of the track and
> railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and
> vertically under dynamic loads imposed by railroad rolling
> equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and
> alinement.

49 C.F.R. § 213.103. In its motion, Union Pacific cites to three cases—one by a state

appellate court and two by federal district courts—where courts held that Section 213

precluded a plaintiff's FELA claims where the plaintiff alleged an injury caused, in

part, by ballast. See Munns v. CSX Transp., Inc., No. 3:07cv2507, 2009 WL 805133

(N.D. Ohio Mar. 27, 2007); Crabbe v. Consol. Rail Corp., No. 06-12622, 2007 WL

3227584 (E.D. Mich. Nov. 1, 2007); Norris v. Cent. of Ga. R.R. Co., 208 Ga. App.

792 (Ga. App. 2006). In each of these cases, the court held that Section 213

substantially subsumes a FELA claim relating to ballast safety. See Munns, 2009 WL

805133 at *2-*3; Crabbe, 2007 WL 3227584 at *2-*6; Norris, 208 Ga. App. at 794-

97.

In his opposition to Union Pacific's motion, Davis identifies a number of

22

federal and state cases where courts held, in contrast, that Section 213 did not

preclude a plaintiff's FELA claims where the plaintiff alleged an injury caused, in

part, by ballast.  See Davis v. Union Pac. R.R. Co., 598 F. Supp. 2d 955 (E.D. Ark.

2009); Hendrix v. Port Terminal R.R. Ass'n, 196 S.W.3d 188 (Tex. App. 2006); CSX

Transp., Inc. v. Miller, 159 Md. App. 123 (Md. Ct. Spec. App. 2004); Elston v. Union

Pac. R.R. Co., 74 P.3d 478 (Colo. App. 2003); Grimes v. Norfolk S. Ry. Co., 116 F.

Supp. 2d 995 (N.D. Ind. 2000).  These courts have reasoned that Section 213's clear

focus is on safety of the train and that Section 213's regulation of ballast does not

cover or substantially subsume a plaintiff's claim that, for example, an employer

railroad is negligent in failing to provide a safe work environment.  See Davis, 598

F. Supp. 2d at 959-60 ("[Section 213] does not touch, cover or substantially subsume

the matter of employee walkways or yard walkway conditions."); Hendrix, 196

S.W.3d at 201 ("However, the FRSA does not preclude, as a matter of law, any and

all employee FELA claims that relate to or touch upon walkway conditions and the

size of rail yard ballast."); Miller, 159 Md. App. at 167 ("Even a surface glance at

[Section 213] persuades us that it does not touch, let alone persuasively cover, the

railroad yard conditions that allegedly fell short of the safe and healthy workplace

environment that CSX was obligated to provide for its employees."); Elston, 74 P.3d

at 488 ("[Section 213 is] directed at promoting a safe roadbed for trains, but offer[s]

23

no indication whether a railroad has a duty to provide safe walkways for employees alongside its tracks."); Grimes, 116 F. Supp. 2d at 1002-03 ("[Section 213 is] directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains.").

This court is persuaded that Davis's FELA claim is not precluded by the FRSA and Section 213. The negligent acts alleged in the complaint cover a broad variety of areas that go beyond the clear scope of Section 213, which is to ensure adequate structural support for tracks. Therefore, Union Pacific is not entitled to summary judgment as to Davis's FELA claim on this ground.

Union Pacific alternatively contends that it is entitled to summary judgment on Davis's FELA claim because Davis cannot show that it acted negligently. The FELA "does not make the employer the insurer of the safety of his employees while they are on duty." Ellis v. Union Pac. R.R. Co., 329 U.S. 649, 653, 67 S. Ct. 598, 600 (1947). The employee must still show that there was some negligence by the railroad, and that the negligence was a cause of the employee's injury. See id. However, the Fifth Circuit has described the plaintiff-employee's burden of proof as "featherweight" and held that FELA claims should only be dismissed on summary judgment "when there is a complete absence of probative facts supporting the plaintiff's position." Howard v. Canadian Nat'l / Ill. Cent. R.R., 233 F. App'x 356, 357 (5th Cir. 2007)(internal

quotations omitted).

The court notes that it recently granted in part a motion to compel discovery requests filed by Davis, and that the subject matter of the discovery will likely have bearing on whether Union Pacific acted negligently. <u>See</u> Record Documents 57 and 78. The court finds it would be inappropriate to grant summary judgment at this junction while discovery is ongoing. Therefore, Union Pacific's motion is **DENIED** as to Davis's FELA claim.

### III. CONCLUSION.

For the reasons discussed herein, Davis's motion for partial summary judgment (Record Document 58) is **DENIED**. Additionally, Union Pacific's motion for summary judgment (Record Document 59) is **DENIED**.

An order consistent with the terms of this memorandum ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 14th day of

_____ , 2014.

_____
JUDGE TOM STAGG